IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LERRONE JENKINS,                              :
                                              :    C.A. No. 1:21-cv-111
                Plaintiff,                     :
                                              :
        v.                                    :
                                              :
COMMONWEALTH OF PENNSYLVANIA, DEPT of :
CONSERVATION AND NATURAL RESOURCES,           :
PRESQUE ISLE STATE PARK; DANIEL POWELL;       :
MATTHEW GREENE; and RYAN RAGER,               :
                                              :    JURY TRIAL DEMANDED
                Defendants.                    :

## AMENDED COMPLAINT

## FILED PURSUANT TO FRCP RULE 15 (a)(2)[1]

### Jurisdiction

1.      This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and §

1343(a)(3).  It also has jurisdiction by virtue of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e.

### Parties

2.      Plaintiff, Lerrone Jenkins, is an adult African American male who resides in the

Western District of Pennsylvania.

3.      Defendant, Commonwealth of Pennsylvania, Department of Conservation and

Natural Resources ("DCNR"), Presque Isle State Park is a government entity located within

the Western District of Pennsylvania.

4.      Defendant, Daniel Powell, is an adult Caucasian male who resides in the Western

District of Pennsylvania, and has been employed at Presque Isle State Park since 1999.

---

[1] Prior to the filing of this Amended Complaint, Plaintiff acquired the written consent of opposing counsel.

5.     Defendant, Ryan Rager, is an adult Caucasian male who resides in the Western District of Pennsylvania, and has been employed as the Assistant Park Manager at Presque Isle State Park since 2013.

6.     Defendant, Matthew Greene, is an adult Caucasian male who resides in the Western District of Pennsylvania, and has been employed as the Park Operations Manager at Presque Isle State Park since 2015.

### Facts

7.     Lerrone Jenkins is an army veteran, who served in the infantry for over 10 years.  He was deployed to Iraq twice and was honorably discharged in 2013.

8.     On March 16, 2019, Mr. Jenkins was hired by the Commonwealth of Pennsylvania to work as a Park Ranger 1 at Presque Isle State Park.

9.     The Park Ranger 1 position is a full-time, seasonal position running from March through November of each year.

10.    Park rangers perform a variety of visitor services such as notifying park visitors of the park's history, facilities, recreational activities, as well as it rules and regulations.

11.    Although there are many park rangers at Presque Isle State Park, Mr. Jenkins was the only African American.

12.    Aside from the incidents described below, Mr. Jenkins enjoyed his position as a Park Ranger 1, and expected to continue his employment for many years.

13.    He executed his duties in a satisfactory manner, and received positive evaluations.

14.     In the course of his employment at Presque Isle State Park, Mr. Jenkins has had numerous negative interactions with Daniel Powell.

15.     Mr. Powell is a long-time employee at Presque Isle State Park, and currently holds the position of DCNR Ranger.  The position of DCNR Ranger is a law enforcement position with full police powers and requires the carrying of a firearm.

16.     In late December 2019, the Chief Ranger Supervisor at Presque Isle State Park, Brian Hogan, began a medical leave of absence that ran into the summer of 2020.

17.     During Mr. Hogan's absence, Mr. Powell was awarded the Chief Ranger position on an acting/interim basis.  Mr. Powell's tenure as the acting chief ranger ran from March 14, 2020 through July 3, 2020.

18.     One of the essential functions of the Chief Ranger Supervisor is supervising subordinates, such as park rangers like Mr. Jenkins.

19.     Upon being elevated to acting/interim Chief Ranger position, Mr. Powell joked that he was going to make the most of his newly acquired power, and he promptly began a campaign directed at Mr. Jenkins which embodied actions that were objectively and subjectively offensive and racially motivated.

20.     Mr. Powell erroneously claimed that Mr. Jenkins was not prompt about reporting to duty, and remarked that he was going to move Mr. Jenkins to a later shift.  Mr. Powell openly associated Mr. Jenkins' purported lateness with racial stereotypes, i.e. African Americans are always late.

21.     In addition, Mr. Powell began assigning Mr. Jenkins custodial duties. Specifically, Mr. Powell would place post-it notes on various objects stating that Mr. Jenkins needed to clean it.  These cleaning duties were menial tasks that were less desirable than the duties typically assigned to the rangers.

22.     Mr. Jenkins observed that Mr. Powell did not assign similar cleaning duties to the Caucasian rangers. Mr. Powell carried on this activity ostentatiously and openly so that Mr. Jenkins would have no doubt that the cleaning-related post-it notes were disproportionately directed towards him.

23.     On or around June 11th or 12th 2020, Mr. Powell approached Mr. Jenkins and made highly offensive and deeply concerning comment.

24.     Specifically, Mr. Powell boasted that his grandfather "killed his first nigger at the age of 12."  The comment was delivered by Mr. Powell with a sense of bravado, as if it were a point of pride, rather than one of embarrassment or remorse.

25.     The statement was clearly and unmistakably directed at Mr. Jenkins.  The two men were standing together, with no one else in the immediate vicinity.  Mr. Powell was staring directly at Mr. Jenkins when he made the comment.

26.     There was no business reason or other legitimate purpose for Mr. Powell to make the comment to Mr. Jenkins.

27.     Mr. Powell intended to offend and threaten Mr. Jenkins by making the comment.

28.     Mr. Powell's decision to use the word "nigger" was deliberate.  It was meant to evoke a response from Mr. Jenkins.

29.     There was further implied derision - - purportedly, a 12 year old boy was capable of killing someone of Mr. Jenkins' race.  The comment also implied that Powell's grandfather had killed more than one African American.

30.     The fact that Mr. Powell, who held the position of acting chief ranger supervisor at the time, decided to confront a subordinate in the workplace, and speak with pride about his grandfather killing at least one person of the same race as the subordinate evidences an intent to intimidate and/or threaten.  The power disparity was heightened by the fact that Mr. Jenkins was unarmed and Mr. Powell carries a firearm at all times.

31.     Given the fact that Mr. Powell was Mr. Jenkins' direct supervisor at the time the offensive remark was made, Mr. Jenkins was unsure as to what to do.

32.     During his scheduled day off from work, Mr. Jenkins thought about the issue some more and decided to report the incident higher up the chain of command.

33.     On June 15, 2020, Mr. Jenkins called Presque Isle State Park and reported the incident with Mr. Powell to the Park Operations Manager, Matthew Greene.

34.     Mr. Jenkins also reported other occasions when Mr. Powell had treated him in a derogatory manner, as well as the fact that Mr. Powell had mistreated African American visitors to the park.

35.    An internal EEO investigation was initiated, and Mr. Jenkins fully cooperated in that process.

36.    As a result of the investigation, it was concluded that "there is sufficient evidence to refer the matter back to the agency to determine if further action is needed."

37.    To date, however, it appears that no disciplinary action has been taken with regards to Mr. Powell.  He continues to hold his law enforcement position and appear at work as scheduled.

38.    Mr. Powell's comment to Mr. Jenkins was not an isolated incident or atypical conduct for Mr. Powell.

39.    Mr. Powell has a history of harboring animus and discriminatory attitudes about African Americans, and he has been vocalizing his beliefs in the workplace.

40.    Mr. Powell's racist comments and discriminatory conduct both pre and post date his interactions with Mr. Jenkins.

41.    Mr. Powell has used the term "nigger" on numerous occasions in the workplace.  He does not view his conduct as inappropriate, and instead, questions why it is acceptable for African Americans to use the term, but not Caucasians.

42.    Even Mr. Powell's own girlfriend, who is also a Ranger at Presque Isle State Park, has acknowledged that Mr. Powell is an old racist.  She witnessed Mr. Powell refer to one of her best friends, who is African American, as "you people."

43.    In fact, Mr. Powell uses the n-word with regularity, and he had previously boasted about having an ancestor who had a planation and owned slaves.  Mr. Powell also appears to be proud of the fact that his grandfather was a ranking member of the KKK, as he has repeatedly alluded to the KKK while in the workplace.

44.    Mr. Powell has made a number of other derogatory comments about Mr. Jenkins and about African Americans in general.

45.    For example, in the summer of 2019, there was a report that a human body may wash ashore from Lake Erie.  The event triggered Mr. Jenkins' PTSD from his military service and required him to call off work.  In response to this series of events, Mr. Powell told coworkers "Typical black guy not showing up for work."

46.    Mr. Powell has also expressed displeasure with the fact that Mr. Jenkins is dating a Caucasian woman.  Mr. Powell has asked coworkers "why would a pretty girl like that date a black guy?"

47.    In 2019, an African American family who had visited the park, complained about Mr. Powell treating them in a hostile manner and referring to them as "you people"

48.    In addition, it is widely known among the rangers at Presque Isle that Mr. Powell refers to the African Americans on the beach as the "five o'clock shadow."

49.    Similarly, Mr. Powell appears to disproportionately target African American visitors to the park for purported violations of park rules such as speeding.

50.    Mr. Powell's overt and pronounced disdain for Mr. Jenkins and African-Americans in general has been on-going and constitutes one continuous discriminatory practice.

51.    As a result, Mr. Powell's derision towards African Americans is well-known among both his peers and his supervisors.

52.    On more than one occasion, various individuals have notified Mr. Powell's supervisors of his conduct.

53.    For instance, park employees have spoken with Mr. Powell's direct supervisor, Assistant Park Manager Ryan Rager, and other supervisors at Presque Isle State Park regarding Mr. Powell's conduct.

54.    As the Assistant Park Manager, Mr. Rager is responsible for supervising park employees.

55.    Mr. Rager and the other supervisors, including Mr. Greene, largely disregarded the complaints lodged against Mr. Powell.

56.    Rather than taking affirmative steps to address the concerns raised about Mr. Powell's conduct, Mr. Rager and the other supervisors figuratively swept the complaints under the rug.

57.    Mr. Powell continues to be employed as a DCNR Ranger, and as recently as the summer of 2020, he was promoted to an interim supervisory role.

58.    This interim supervisory role was awarded to Mr. Powell even though Mr. Rager and Mr. Greene had received multiple complaints about Mr. Powell's conduct.

59.    Mr. Powell's ongoing discriminatory conduct is egregious and offensive.  It has created a hostile work environment for Mr. Jenkins.

60.    Due to the overwhelmingly offensive nature of Mr. Powell's comments in June 2020 as well as Mr. Powell's supervisory role over Mr. Jenkins, Mr. Jenkins requested a temporary leave of absence.

61.    Mr. Jenkins' request for a leave of absence was denied, and he was effectively forced to chose between resigning and returning to work and continuing to endure Mr. Powell's behavior.

62.    Mr. Jenkins sought to preserve his employment and returned to work despite his reservations and concerns about Mr. Powell.

63.    In early September 2020, Mr. Jenkins filed a charge of discrimination with EEOC reporting Mr. Powell's racist behavior and the Commonwealth's failure to adequately address the situation.  (EEOC Charge No. 533-2020-02254)

64.    After reporting Mr. Powell's racist behavior, Mr. Jenkins' work relations with his peers became strained.

65.    The Commonwealth, through the persons of Mr. Rager and Mr. Greene, conducted duplicative interviews in August of 2020, re-interviewing the same witnesses who had provided information in support of Mr. Jenkins' claim that Mr. Powell had engaged in race-based discrimination.  The witnesses were questioned in a manner that made them feel as though they were being interrogated, or cross-

examined with the objective being to cause them to contradict themselves or provide inconsistent responses.

66.     The individuals who came forward ended up feeling harassed and regretting their attempts to report Mr. Powell's misconduct.

67.     It was also apparent to the rangers that Mr. Powell was not being disciplined for his misconduct, as he continued to work unaffected.

68.     As a result, the investigation has the perverse effect of only strengthening Mr. Powell's position as a harasser, and diminishing the standing of those who sought to report his discriminatory conduct.

69.     Following his internal report of discrimination, Mr. Jenkins continued to be highly concerned about Mr. Powell and what he might say or do.

70.     At the beginning of July, Mr. Jenkins reported feeling uncomfortable in the workplace, especially in light of the fact that he was still being supervised by Mr. Powell.

71.     The Commonwealth offered no support to Mr. Jenkins.  He was not assured of any actions being taken to alleviate his fears that Mr. Powell would continue to harass him or might even physically harm him.   Instead, he was told it was still an "open investigation."

72.     Following his internal report of discrimination, Mr. Jenkins became largely ostracized from his coworkers and made to feel uncomfortable in the workplace.

73.     After making the report, Mr. Jenkins was assigned to work at the marina on an ongoing basis.  This assignment made him physically remote from his peers.  Previous to the report, Mr. Jenkins had rotated through numerous assignments in all parts of the park, which had allowed him to regularly interact with his peers.

74.     Co-workers have been advised to avoid interacting with Mr. Jenkins.

75.     One coworker explained to Mr. Jenkins that the rangers were informed not to speak with Mr. Jenkins, since he was a "snitch."

76.     In addition, the rangers began avoiding Mr. Jenkins in the ranger station. Previously, the rangers had chatted with Mr. Jenkins about their day and their activities.  Following his report, the other rangers began dispersing as quickly as possible when Mr. Jenkins entered the ranger station.

77.     Similarly, park employees from other departments were told to stop fraternizing with Jenkins during their breaks, and at least one employee was disciplined for failing to adhere to this directive, since the other departments did not want to be a part of "the shit."

78.     Mr. Greene and Mr. Rager are responsible for Mr. Jenkins being ostracized in the workplace.  They either ordered or approved of Mr. Jenkins' reassignment to the marina. They either directed park employees to avoid interacting with Mr. Jenkins or knowingly condoned those practices.   Similarly, Mr. Greene and Mr. Rager either participated in or permitted at least one employee to be disciplined for violating this directive.

79.     This ostracism, combined with ongoing concerns about Mr. Powell's behavior, made the workplace unbearable for Mr. Jenkins.

80.     On October 16, 2020, Mr. Jenkins was seen by a licensed clinical social worker at the

VA, who drafted a letter on Mr. Jenkins' behalf so that he could obtain a medical leave of

absence for the remainder of the 2020 season at Presque Isle State Park.

81.     Mr. Jenkins has been unable to return to work.

**Count I**

**Race Discrimination and Retaliation in Violation of Title VII of the Civil Rights Act of 1964**

**Jenkins v. Commonwealth of Pennsylvania, Department of Conservation and Natural Resources, Presque Isle State Park**

82.     The previous paragraphs are incorporated herein in their entirety.

83.     Mr. Jenkins filed a timely charge of discrimination with the Equal Employment

Opportunity Commission in September 2020.  (EEOC Charge No. 533-2020-02254)

84.     In that charge, Mr. Jenkins provided allegations supporting his claim that he has

been subjected to a hostile work environment on the basis of his race.

85.     Mr. Jenkins has exhausted his administrative requirements, as the EEOC has

investigated his claim and issued a Notice of Right to Sue.

86.     As described in the facts section above, the Commonwealth Defendant has

permitted and condoned an ongoing hostile work environment, in which Mr. Jenkins is

discriminated against based upon his race.

87.     The conduct included, but is not limited to the following: Mr. Jenkins being

confronted by a supervisor who made a highly offensive and troubling statement about his

grandfather killing "his first nigger" at the age of 12, Mr. Jenkins being subjected to

stereotypical derogatory comments by that same supervisory figure; and Mr. Jenkins being

assigned to less desirable tasks than those assigned to his Caucasian peers.

88.     Mr. Jenkins, as well as Mr. Jenkins' coworkers, reported Mr. Powell's conduct to the

supervisory staff at Presque Isle State Park on multiple occasions.

89.     Despite these reports, the Commonwealth has failed to take adequate action to

address the problematic behavior.

90.     The inadequacy of the Commonwealth's response is evidenced by the fact that Mr.

Powell has not suffered any repercussions for his actions.  Mr. Powell continues to report to

work as usual and was even permitted to maintain a supervisory role over Mr. Jenkins.

91.     In addition, witnesses who had reported Mr. Powell's behavior were made to feel

that they had made a mistake by coming forward.  The witnesses were subjected to

multiple interviews, and felt as though the investigation was designed to undercut the

validity of the witnesses' statements, rather than address the problematic behavior that

had been reported.

92.     While it appears that Mr. Powell has been protected by his supervisors, and has

remained unscathed by his discriminatory conduct, Mr. Jenkins has been essentially

identified as the issue and segregated and ostracized from his peers.

93.     The overall effect is that Mr. Jenkins continues to be degraded and treated in a

detrimental fashion while his harasser continues to be held in high esteem by the

Commonwealth.

94.     Given these circumstances, Mr. Jenkins continues to feel unsafe in the workplace,

and has been unable to return to work.

95.     The conduct that occurred after Mr. Jenkins' report of discrimination, amounted to

retaliation and, along with the discriminatory conduct of Mr. Powell, created the

circumstances leading to Mr. Jenkins constructive discharge.

**Count II**

**Race Discrimination and Retaliation in Violation of Section 1981 which constitutes a Violation of 42 U.S.C. Section 1983**

**Jenkins v. Powell, Greene and Rager**

96.    The previous paragraphs are incorporated herein in their entirety.

97.    All of the individual Defendants are employees of the Commonwealth of Pennsylvania, and by virtue of their employment relationship act under color of state law for purposes of the provisions for 42 U.S.C. § 1983.

98.    By virtue of 42 U.S.C. § 1981 it is unlawful for any person to discriminate against an individual on account of his race.

99.    A violation of 42 U.S.C. § 1981 by a person acting under state law violates 42 U.S.C. § 1983.

100.    During his employment at Presque Isle State Park, Mr. Jenkins was the only African American park ranger employed at Presque Isle State Park.

101.    Mr. Jenkins was subjected to a hostile work environment on account of his race.  In other words, the individual defendants engaged in conduct, which was pervasive and severe, that created an intolerable work place for Mr. Jenkins, whether considered from an objective or subjective perspective, on account of his race.

102.    As described above, the hostile work environment was principally fostered through the statements of and conduct committed by Mr. Powell.

103.     Notably, Mr. Powell was assigned to an interim supervisory role when he accosted Mr. Jenkins with a highly offensive and troubling statement, and when he made stereotypical derogatory comments about Mr. Jenkins.  He also assigned the less desirable

tasks to Mr. Jenkins in a disproportionate fashion when compared to the assignments given to Caucasian employees.

104.     Mr. Jenkins reported Mr. Powell's conduct to Mr. Greene on June 15, 2020.

105.     As described above, Greene and Rager are the individuals responsible for handling personnel matters at Presque Isle State Park, and they failed to take affirmative steps to address the discriminatory conduct, in spite of being actually aware of the discrimination directed at Mr. Jenkins.

106.     Upon information and belief, Mr. Greene and Mr. Rager failed to discipline Mr. Powell for his conduct.  They also failed to take reasonable steps to protect Mr. Jenkins from further discriminatory actions.

107.     Mr. Greene and Mr. Rager, with full knowledge of Mr. Powell's propensity to create a racially hostile work environment, permitted Mr. Powell to continue to hold an interim supervisory role and to continue to harass and discriminate against Mr. Jenkins, until Mr. Hogan was able to resume his duties.

108.     Thus, Mr. Powell continued to exercise discretionary supervisory authority over Mr. Jenkins for approximately three weeks following the report of discrimination.

109.     Thereafter, Mr. Powell returned to his DCNR Ranger position.

110.     Consequently, Mr. Greene and Mr. Rager have taken affirmative steps to protect Mr. Powell, who continues to work and earn income, while the victim of the harassment, Mr. Jenkins, has been forced to seek medical treatment and take an unpaid medical leave.

111.     Due to the conduct described herein, Mr. Jenkins has been injured financially and emotionally.

112.   The conduct described above violates 42 U.S.C. Section 1981 and can be enforced through 42 U.S.C. Section 1983.

113.   Each of the individual defendants created and/or condoned and enabled an objectively hostile work environment.

### Count III

### Race Discrimination in Violation of the Equal Protection Clause of the Fourteenth Amendment which constitutes a Violation of 42 U.S.C. Section 1983

### Jenkins v. Powell, Greene and Rager

114.   The averments set forth above are incorporated herein by reference.

115.   The Fourteenth Amendment to the United States Constitution by virtue of its equal protection clause prohibits intentional racial discrimination.

116.   Section 1983, (42 U.S.C. § 1983) makes it unlawful for any person acting under color of state law to violate the constitutional rights of another.

117.   Mr. Jenkins is entitled to equal protection under the law under the Fourteenth Amendment to the United States Constitution.  Specifically, he is entitled to be provided a work place that is free from racial discrimination and harassment on account of his race.

118.   As has been described above, the individual Defendants have created and/or condoned a hostile work environment for Mr. Jenkins, on account of race and thereby made the work place objectively and subjectively intolerable for Mr. Jenkins.

**Count IV**

**Retaliation in Violation of the First Amendment which constitutes a
Violation of 42 U.S.C. Section 1983
Jenkins v. Greene and Rager**

119.    The averments set forth above are incorporated herein by reference.

120.    The First Amendment to the United States Constitution guarantees individuals

freedom of speech and freedom of petition.

121.    Jenkins reported the presence of race discrimination at Presque Isle State Park on

two separate occasions.

122.    Reporting discrimination is not one of Mr. Jenkins' job duties.

123.    On June 15th, Jenkins contacted Matthew Greene and filed an internal report of race

discrimination with the Commonwealth of Pennsylvania.

124.    In early September, Mr. Jenkins filed a charge of race discrimination with the Equal

Employment Opportunity Commission.

125.    In these complaints, Mr. Jenkins described the racism that he personally faced, as

well as discriminatory practices that involved African American patrons at the park.

126.    Following these reports, Mr. Jenkins was labeled a "snitch" and isolated from the

other park employees.

127.    As detailed above in the facts section, Mr. Greene and Mr. Rager were responsible

for reassigning Mr. Jenkins to a physically remote post and directing other park employees

to avoid interacting Mr. Jenkins, who they deemed to be a "snitch."

128.    These actions were intended to punish Mr. Jenkins for his protected activity and

were meant to dissuade him and, indeed, any reasonable person from engaging in

protected activity, including reporting racial discrimination.

129.    These actions caused Mr. Jenkins a great deal of distress, as he lost any hope that the Commonwealth would take appropriate steps to address the discrimination or keep him safe from harm.

## INJURIES

130.    The actions of the Defendants have injured Mr. Jenkins in a variety of ways.  They have created or fostered a work environment that is truly hostile and which has caused him to be constructively discharged from his employment, inflicting financial injuries.  They have also intentionally and deliberately caused Mr. Jenkins to suffer emotional distress, anxiety, embarrassment, humiliation, and have exacerbated his PTSD by their racial discrimination and harassment.

WHEREFORE, Plaintiff demands judgment in his favor against the Defendants and an award of all remedies available to him under the law including counsel fees, costs, equitable relief and such other relief as is just and appropriate.  Specifically, he seeks reimbursement for lost wages and costs associated with medical treatment, and compensatory damages.   He also seeks punitive damages from the individual Defendants.

Respectfully submitted,

/s/ Edward A. Olds
Edward A. Olds
Pa Id No. 23601

/s/ Jaimie L. George
Jaimie L. George
Pa Id No. 309368

Olds George Law LLC
1007 Mount Royal Boulevard
Pittsburgh, PA 15223
412-492-8975